DENNIS FRANDSEN AND COMPANY, INC., Respondent,

v.

The COUNTY OF KANABEC, Respondent,

Township of Hillman, Minnesota, Appellant.

No. 51661.

Supreme Court of Minnesota.

June 12, 1981.

Blomquist & DeWan and Barry L. Blomquist, North Branch, for appellant.

Norman J. Loren, County Atty., Mora, for The County of Kanabec.

Bassford Heckt Lockard & Mullin, Maclay R. Hyde and Charles Lundberg, Minneapolis, for plaintiff-respondent.

SIMONETT, Justice.

The township appeals from an amended judgment dated June 17, 1980, declaring its permanent zoning ordinance void because its Board of Supervisors exceeded its elective authority in adopting the ordinance. The township did not appeal from the district court's original judgment dated September 19, 1979, invalidating a related interim zoning ordinance on the same grounds. Limiting our review, as we must, only to new matters raised by the amended judgment, we affirm.

To set out the posture of this case on appeal, both the factual setting and the procedural history must be given. Hillman is a sparsely settled, agricultural township in the northern part of Kanabec County. In early 1978 the Board of Supervisors learned that plaintiff Dennis Frandsen and Company, Inc., had purchased 620 acres with the intention of developing a plat of some 98 5-acre tracts mainly for seasonal, recreational homes. A special town meeting was duly called for April 25, 1978, to vote on the question: "Shall the board of supervisors adopt zoning and related regulations and restrictions?" This language is taken directly from Minn.Stat. § 366.11 (1980).

Some days prior to the election the town clerk mailed each of the 170 or so registered voters a letter with an enclosed summary of the proposed interim zoning ordinance. The summary stated the ordinance sought to be adopted would allow only one single family dwelling per quarter-quarter section, although lot size could be as small as 2 acres. The summary also stated that if the ordinance was approved, it would be in effect until September 1, 1978, during which time the township would study the need for adopting a permanent ordinance. In the town clerk's accompanying letter to the voters, he pointed out "If this vote passes the Township would be zoned Agricultural with the density ordinance the only restriction"; that the only way to stop the rumored land developer was "to limit the number of dwelling[s] per so many acres"; and in his concluding paragraph stated, *"This is not comprehensive zoning."* (Clerk's emphasis.)

The proposed zoning was further discussed at the April 25 meeting. The vote was 73 "yes" and 60 "no." Since the majority vote was less than 70%, the board, apparently having in mind Minn.Stat. § 366.12 (1978), assumed the proposed interim zoning ordinance was defeated.

Following the April election, in June Frandsen submitted his plat of "Raspberry Acres" to the Kanabec County Planning Commission and, in due course, the requirements for plat acceptance by the county and its agencies were met. Also during the summer of 1978, other developers showed an interest in Hillman Township. This prompted a revival of interest in zoning, and the Board of Supervisors considered having another election. In making inquiries, the board was advised only a single

majority vote, not 70%, was needed for the township to adopt zoning regulations, so that, apparently, the April vote was sufficient after all.

Consequently, a special meeting was held by the township on August 25, 1978, and an "interim" zoning ordinance adopted by the Board of Supervisors. Its essential feature was a limitation on density of dwellings to one residence per quarter-quarter section. Following this, on September 27, the county planning commission rejected Frandsen's plat on the grounds it did not comply with Hillman's interim zoning ordinance. That same fall, Frandsen sued Hillman and the county to have the interim zoning ordinance declared invalid.

The validity of the interim zoning ordinance depended on the effect to be given the simple majority vote in the April 1978 election, and that, in turn, depended on a construction of Minn.Stat. §§ 366.12 to .14 (1978), set out below.[1] As can be seen, sections 366.12 and 366.13 both authorize a township to adopt essentially the same zoning regulations, but rather inexplicably, the first section requires a 70% majority while the second requires only a simple majority.[2]

1. Minn.Stat. §§ 366.12 to .14 (1978) provide in pertinent part:

366.12 REGULATIONS. If 70 percent or more of the voters voting on such question vote "Yes," the town board shall be authorized and empowered to regulate the location, height, bulk, number of stories, size of buildings and other structures, the location of roads and schools, the percentage of lot which may be occupied, the sizes of yards and other open spaces, the density and distribution of population, the uses of buildings and structures for trade, industry, residence, recreation, public activities or other purposes, and the uses of lands for trade, industry, residence, recreation, agriculture, forestry, soil conservation, water supply conservation, or other purposes, and to carry out the provisions of this grant shall issue building permits, and it shall be unlawful to erect, establish, alter, enlarge, use, occupy, or maintain any building, structure, improvement, or premises without first having obtained such permit.

This section is subject to the provisions and limitations of section 366.13.

366.13 ZONING DISTRICTS. For any or all of these purposes the board of supervisors of any such town where a majority of the legal voters voting thereon have voted "Yes" at such an election, may divide the portions of the town into districts or zones of such number, shape, and area as may be deemed best suited to carry out the purposes of sections 366.10 to 366.18, and within such districts or zones it may regulate and restrict the location, height, bulk, number of stories, size of buildings and other structures, the location of roads and schools, the percentage of lot which may be occupied, the sizes of yards and other open spaces, the density and distribution of population, the uses of buildings and structures for trade, industry, residence, recreation, public activities, or other purposes, and the uses of land for trade, industry, residence, recreation, agriculture, forestry, soil conservation, water supply con-

servation, or other purposes. All such regulations shall be uniform for each class and kind of buildings and for the use of land throughout each district, but the regulations in one district may differ from those in other districts.

\* \* \* \* \* \*

366.14 PURPOSE OF REGULATIONS. These regulations shall be made in accordance with the comprehensive plan, designed and enacted for the purpose of promoting the health, morals, convenience, order, prosperity, or welfare of the present and future inhabitants of any such town, including, among other things, lessening congestion in streets or roads or reducing the wastes of excessive amounts of roads; securing safety from fire and other dangers; providing adequate light and air; preventing, on the one hand, excessive concentration of population and, on the other hand, excessive and wasteful scattering of population or settlement; promoting such distribution of population and such classification of land uses and distribution of land development and utilization as will tend to facilitate and conserve provisions for transportation, water flowage, water supply, drainage, sanitation, educational opportunities, recreation, soil fertility, food supplies, and protection of both urban and non-urban development.

2. In making its inquiries, the Board of Supervisors called the Attorney General's office and was sent six Attorney General Opinions dating back to 1947 stating that only a simple majority was needed. These opinions relied on section 366.13.

In 1980 the legislature amended Minn.Stat. § 366.12 to delete the 70% requirement, substituting instead a simple majority. 1980 Minn. Laws, ch. 413, § 3.

Without commenting as to their significance, we note these other distinctions between sections 366.12 and 366.13 as of 1978:

(a) Section 366.12 was entitled "Regulations" by the revisor of statutes, and section 366.13 "Zoning Districts."

About a year later, on September 19, 1979, the district court entered its judgment declaring Hillman's interim zoning ordinance to be invalid and unenforceable. In so doing, the trial court concluded, in part:

(1) The April 1978 election was held pursuant to Minn.Stat. § 366.12, which required a 70% vote. Minn.Stat. § 366.13 was not applicable since the township did not propose to zone under that section, which requires zoning to be, as provided by section 366.14, "in accordance with a comprehensive plan." At the April 1978 election the voters were expressly told by the clerk that the proposed ordinance did not involve comprehensive zoning.

(2) The town board exceeded its authority in extending the duration of the interim ordinance beyond the time presented to the voters. At the April 1978 election the board, in its summary, had stated the ordinance would be in effect only until September 1, 1978.

(3) Because the township was not studying a permanent ordinance consistent with a "comprehensive plan" within the meaning of Minn.Stat. § 366.14, the ordinance adopted was not a valid "interim" measure permissible under section 366.13.

The township took no appeal from this judgment. Instead, on July 13, 1979, before the trial court's decision had issued, the township adopted a permanent zoning ordinance. This permanent zoning ordinance did not divide the township into districts but, in effect, zoned the township as one single-use district, providing that there be no more than one nonfarm dwelling per quarter-quarter section, although individual lot sizes could be as small as 1 acre. At the same time that Hillman recorded its permanent zoning ordinance, it also filed a comprehensive zoning plan.

■ The permanent zoning ordinance was adopted by the township without notifying the district court. Frandsen claimed he was unaware of the new ordinance (although there is evidence he had been told by the town clerk that one was in the offing) until the county again rejected the Raspberry Acres plat, this time on the basis of the permanent ordinance. In any event, Frandsen went back to court and was granted permission to amend his complaint to allege also the invalidity of the permanent zoning ordinance.[3]

On June 3, 1980, the trial court issued an order adding additional conclusions of law and amending the judgment of October 1, 1979, to declare the permanent zoning ordinance also invalid, unauthorized by the April 1978 vote, and unenforceable. The court further ordered the Kanabec County Board and its planning commission to forthwith approve Frandsen's final plat. Pursuant to this order, an amended judgment was entered on June 17, 1980, from which the township has timely appealed.

In its June 3 decision, the trial court declined to rule on all of Frandsen's claims[4] because it considered that its conclusion that the town board lacked statutory voter approval disposed of the case.

(b) Section 366.13 requires the township to "divide the portions of the town into districts or zones" for purposes of regulation, section 366.12 does not.

Section 366.14 provides, "These regulations shall be made in accordance with the comprehensive plan * * *." The district court ruled this requirement applied only to regulations adopted under section 366.13, not section 366.12. We find this construction reasonable but decline to endorse it here.

3. The appellant township argues the trial court erred in allowing Frandsen to amend his complaint to put the validity of the permanent zoning ordinance in issue. We disagree. The validity of the permanent zoning ordinance was closely related to the interim ordinance; both affected Frandsen's plat; and, moreover, the trial court had expressly retained jurisdiction over the parties to assure compliance with its initial decree.

4. Among Frandsen's other arguments for holding the permanent zoning ordinance invalid were these: that it violated section 366.13 because it established a single-use district; that it violated section 366.14 because no comprehensive plan existed; and that it was unconstitutional because unreasonably related to its ends and too limiting in the scope of permissible land uses.

Like the trial court, we do not reach these issues.

On appeal from the amended judgment, the township argues the trial court erred in concluding that the permanent zoning ordinance was invalid because the board exceeded its authority in adopting the ordinance on a less than 70% vote and beyond the 6-month duration of the interim ordinance.

On its face, the ballot submitted to Hillman residents on April 25, 1978, confers blanket authority on the Board of Supervisors to adopt zoning regulations over an unlimited period of time. Nevertheless, the trial court held the vote empowered the board to adopt only noncomprehensive zoning under Minn.Stat. § 366.12, and that only for a limited period. These conclusions were made in the first judgment and were not appealed.

In *E.C.I. Corp. v. G.G.C. Co.*, 306 Minn. 433, 435, 237 N.W.2d 627, 629 (1976), we said, "[T]he time to appeal an issue begins to run anew from a modification of judgment when the issue was for some reason not appealable before the modification." Here, the issue of the kind of voting authority conferred by the voters on the town board was determined under the first judgment and was appealable. The time to appeal this determination expired and does not begin to run anew by reason of an amendment which leaves that determination undisturbed.

Having failed to appeal the first judgment, Hillman is bound by the trial court's determination that the township's contemplated zoning falls under section 366.12 which required a 70% majority vote. Since the zoning proposal carried only a bare majority, the April 1978 vote did not empower the Board of Supervisors to enact either interim or permanent zoning. Since the board requested authority to enact interim zoning alone, and that only to September 1, 1978, it lacked authority to adopt further zoning after that date. These conclusions are the law of the case, not reviewable by us here. Consequently, we must, and do, affirm.

Affirmed.